# UNITED STATES DISTRICT COURT
for the
Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

**The premises known as 225 River Street,**
**Apartment #1, Rochester, New York**

Case No. 22-MJ-**4119**

## APPLICATION FOR A SEARCH WARRANT

I, PATRICK HOFFMANN, a Special Agent with the ATF, requests a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Western District of New York *(identify the person or describe property to be searched and give its location)*:

The subject property to be searched: **The premises known as 225 River Street, Apartment #1, Rochester, New York, more particularly described in Attachment A,**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See Attachment B for the Items to be Seized, all of which are evidence of fruits, evidence or information of violations of 21 U.S.C. §§ 841(a)(1), 846 & 856(a)(1) and 18 U.S.C. §§ 922(g)(1) and 924(c), and all of which are more fully described in the application and affidavit filed in support of this warrant, the allegations of which are adopted and incorporated by reference as if fully set forth herein.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
   X   evidence of a crime;
   ___   contraband, fruits of crime, or other items illegally possessed;
   X   property designed for use, intended for use, or used in committing a crime;
   ___   a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of **21 U.S.C. §§ 841(a)(1), 846, 856(a)(1) and 18 U.S.C. §§ 922(g)(1) and 924(c),** and the application is based on these facts which are continued on the attached sheet.

Moreover, based upon the specific grounds set forth in the underlying affidavit, the persons serving this warrant are not required to knock and announce their presence as otherwise required by law.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

PATRICK HOFFMAN, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September **30** , 2022   **at 11:24 am**

_____
*Judge's signature*

City and State:   Rochester, New York

HON. MARIAN W. PAYSON, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

The residence at **225 River Street, Apartment #1, Rochester New York** is more particularly described as a two story multi-family dwelling.   The premise is located on the northwest side of River Street and the front door faces northeast.   The house is light blue in color, with white trim and a black metal roof.   There is a concrete walkway on the front of the building that leads to a common stoop for both apartments and the door to apartment one is to the left, specifically the one that faces northeast.   The driveway is on the southwest side of the building.   The number "225" is in black with and is affixed to the wall above the mailbox on the stoop, immediately outside the door to apartment 1.

**ATTACHMENT B**

**SCHEDULE OF ITEMS TO BE SEIZED**

The items to be seized are fruits, evidence and/or information in whatever form and however stored, relating to violations of Title 21, United States Code, Section 841(a)(1), Title 21, United States Code, Section 846, and Title 21, United States Code, Section 856(a)(1), and Title 18, United States Code, Section 922(g) and 924(c), specifically:

a. Cash, currency, financial instruments, securities, cashier's checks, money drafts, letters of credit, keys to safe deposit boxes, precious metals, jewelry, and other items of value, and proceeds of drug transactions.

b. Records of any bank or financial accounts, and records and documents of financial transactions relating to obtaining, transferring, secreting, or spending of sums of money made from engaging in narcotics trafficking.

c. Books, records, receipts, notes, ledgers, airline tickets, money orders, shipping labels, shipping receipts, shipping boxes, order forms, storage receipts, publications, checks, money orders, money transfer receipts, wire transfer records, records of drug transactions, drug sources, and drug customers, and other papers relating to the transportation, manufacturing, ordering, sale and distribution of controlled substances.

d. Records of telephone calls contained in billing statements, addresses and telephone numbers in books and papers which reflect names, addresses and telephone numbers related to drug trafficking, photographs regarding drug trafficking and drug trafficking associates.

e. Personal computers, laptop computers, mobile telephones, cellular telephones, smartphones, digital cameras, tablet computers, and other communication and computing devices.

f. Electronic and digital media, including compact discs, computer hard drives, thumb drives, and flash drives.

g. Records of off-site locations to store records or controlled substances, including safe deposit box keys, records and receipts and rental agreements for storage facilities.

h. Cellular telephones, tablets, computers, smart cellular telephones, paging devices, beepers, and other communication devices which may indicate evidence of involvement in conspiracy to possess with intent to distribute or distribute controlled substances and/or evidence of possession with intent to distribute, distribution, or importation of controlled substances, and/or evidence of the illegal possession of firearms.

    i. Any subscriber information, contact information to include, names, addresses, telephone numbers, email addresses or other identifiers;

    ii. Any call log information, including missed, incoming, and outgoing calls and any information associated with those numbers;

iii.   Any photographs, video and audio files;

iv.   Any text messages, email messages, chats, multimedia messages, installed applications or other electronic communications;

v.   Any calendar, note, password, dictionary entries;

vi.   Any internet or browser entries or history; and

vii.   Any system, data or configuration information contained within the device.

viii.   Any GPS or location data within the device.


i.   Documents and records regarding the ownership, occupancy, and/or possession of the searched premises, including utility bills, loan payment receipts, rent receipts, and lease or rental agreements.

j.   Any lock box, safe, or vault found on the premises.

(Final Version Mag. Payson 5-4-04)

## <u>ADDENDUM TO SEARCH WARRANT</u>
### <u>SEARCH OF COMPUTERS</u>

    1.   The computer or electronic media search authorized by this warrant shall be completed within 60 days from the date of the warrant unless, for good cause demonstrated, such date is extended by Order of this Court.

    2.   In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize computer search methodology to search only for files, documents or other electronically stored information which are identified in the warrant itself.

    3.   Should the government not locate any of the items specified in the warrant (or other fruits, contraband, instrumentalities, or property subject to forfeiture) within the authorized search period (including any extensions granted), the government shall return the computer or electronic media to the owner.

    4.   In any circumstance not covered by paragraph three (3) above, upon completion of the search, the government, upon request of the owner of the computer, shall promptly return to the owner of the computer copies of all files and documents requested and specified by the owner, excluding any items or files seized pursuant to the warrant or other fruits, contraband, instrumentalities or property subject to forfeiture.

    5.   If electronically stored data or documents have been identified by the government pursuant to this warrant, or other fruits, contraband, instrumentalities or property subject to forfeiture, the government may retain the original hard drive or other data storage mechanism pending further order of this Court.  The retention of the original hard drive or other data storage mechanism does not relieve the government of its obligation to return to the owner of the computer files, documents or other electronically stored information identified in paragraph four (4) above.

    6.   Nothing in this warrant shall limit or prevent the government from retaining the computer or electronic media as fruits, contraband, or an instrumentality of a crime or commencing forfeiture proceedings against the computer and/or the data contained therein. Nothing in the warrant shall limit or prevent the owner of the computer or electronic media from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property or (b) making a request of the government to return certain specified files, data. Software or hardware.

    7.   Should there be a dispute or a question over ownership of any computer or any electronically stored data or documents stored therein, the government shall promptly notify this Court so that such dispute or question can be resolved.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF THE
PREMISES KNOWN AS

**225 River Street, Apartment #1**
**Rochester, New York**

22-MJ- 4119

STATE OF NEW YORK   )
COUNTY OF MONROE   ) SS:
CITY OF ROCHESTER   )

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH AND SEIZURE WARRANT**

PATRICK HOFFMANN, being duly sworn, deposes and says:

1.      I am a Special Agent with the United States Department of Justice, Bureau of

Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Rochester, New York

Field Office.  Accordingly, I am the kind of Special Agent as delineated in Title 18, United

States Code, and Section 3051.

2.      I have been employed as an ATF Special Agent for approximately 17 years.

Prior to being employed as an ATF Special Agent, I was employed by the United States

Marine Corps as an Infantry Sergeant as a machine gun section leader in an infantry

company.  I am a graduate of the Criminal Investigator School and the ATF National

Academy, both located at the Federal Law Enforcement Training Center in Glynco, Georgia.

As part of my professional experience, I have participated in state and federal investigations

involving the illegal possession of firearms and narcotics and violations of federal and state law.

3.      During my tenure with ATF, I have participated in numerous investigations relating to armed individuals who were involved in the distribution of controlled substances in violation of federal narcotics laws, including Title 21, United States Code, Sections 841(a) 846 and 856, as well as weapons offenses under Title 18 United States Code, Sections 922(g) and 924(c).  I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs.  I have been the affiant on affidavits in support of wire communication intercepts and numerous federal search warrants, arrest warrants, and other applications.    Through my training, education, experience, and speaking with other law enforcement officers and confidential sources, I have become familiar with the manner in which illegal drugs are manufactured, transported, stored, and distributed, and with the methods of payment for such drugs.  I am also familiar with the coded language and jargon used by persons engaged in narcotics trafficking to reference various narcotics and controlled substances, as well as the ways in which illicit drug sellers and users attempt to evade detection through counter-surveillance measures, the use of codes, cryptic phrases, abbreviated words, and prearranged terminology, and the use of smart phones and other communications technology.

## PURPOSE OF AFFIDAVIT

4.      This affidavit is submitted in support of a Search Warrant authorizing a search of the following premises (including outbuildings, detached garages, and curtilage), as further described in Attachment A, *Property to be Searched*:

**225  River Street, Apartment #1**
**Rochester, New York**

The request for the search warrant is limited to "books and records," as set forth in Attachment B.

5.      The residence at **225 River Street, Apartment #1, Rochester New York** is more particularly described as a two story multi-family dwelling.  The premise is located on the northwest side of River Street and the front door faces northeast.  The house is light blue in color, with white trim and a black metal roof.  There is a concrete walkway on the front of the building that leads to a common stoop for both apartments and the door to apartment one is to the left, specifically the one that faces northeast.  The driveway is on the southwest side of the building.  The number "225" is in black with and is affixed to the wall above the mailbox on the stoop, immediately outside the door to apartment 1.

6.      In connection with this request for a Search Warrant, your affiant has concomitantly submitted a Criminal Complaint alleging that **BRANDON WASHINGTON** aka "B Mack" aka "Bawse Mack, **DEADRICK D. FULWILEY, DERRICK STEELE** and **JERMELL C. WASHINGTON** have committed violations of Title 21, United States Code, Section 841(a) and 846 (conspiracy to possess with the intent to distribute marijuana), Section 856 (maintaining locations for the purpose of manufacturing, storing and distributing marijuana), and, Title 18, United States Code, Sections 2 (aiding and abetting), and Section 924(c) (possession of a firearm in furtherance of a drug trafficking crime); and, (2) that **BRANDON WASHINGTON** aka "B Mack" aka "Bawse Mack, **JERMELL C. WASHINGTON** and **DERRICK STEELE** have committed violations of Title 18, United States Code, Sections 2 (aiding and abetting) and 922(g)(1) (felon in possession of firearms and/or ammunition), and, (3) that **DEADRICK D. FULWILEY** has committed a violation of Title 18, United States Code, Section 922(o)(1) (unlawful possession of a machinegun);

and, (4) that **PRIEST BARR and BRITTNEY HUGGINS** have committed violations of Title 21, United States Code, Section 841(a) and 846 (conspiracy to possess with the intent to distribute marijuana), and Section 856 (maintaining locations for the purpose of manufacturing, storing and distributing marijuana).

7.      As more fully described below, the facts in this affidavit are based on your affiant's review of police reports filed and evidence collected in connection with this investigation, as well as  conversations with other law enforcement officers involved in this investigation.   The conclusions drawn in this affidavit are based on my training and experience, as well as on the advice of other experienced federal, state, and local narcotics investigators.  Since this affidavit is being submitted for a limited purpose, I have not included each and every fact that I know concerning this investigation.  Rather, I have set forth only those facts that relate to the issue of whether probable cause exists to believe that the above-named defendants committed the above-mentioned offenses, *as well as providing probable cause to believe that the premises sought to be searched will contain evidence of those crimes.*

## **OVERVIEW**

8.      During the summer of 2022, your affiant was assigned to a case involving narcotics distribution, the possession of illegal firearms and associated violence.   In that regard, your affiant, ATF Special Agent Van Alstyne and RPD Investigator Joseph Briganti met with a confidential source who provided detailed information relative to an ongoing "feud" between BRANDON WASHINGTON aka "B Mack," who has self-identified his membership in the "Crips," a nationally recognized gang, and R.S. aka "Coop."    The confidential source has not only provided timely information in this case, but has provided

information in other investigations.   His/her information has been independently corroborated to the best extent possible without risking his/her safety.

9.      According to the confidential source, R.S. is aligned with another nationally recognized gang called the "Bloods."  According to the confidential source, Washington solicited members and/or affiliates of the Crips street gang to travel here from other cities, including the city of Boston, to commit acts of violence against R.S. and other members of the Bloods street gang.   The conflict between Washington and R.S. has resulted in multiple instances of violence, including drive-by shootings, arson, assault and murder, including the murder of a Rochester Police Department Investigator working in the Tactical Unit.

10.      Apart from that dispute, the confidential source further stated that in the summer of 2022, Washington operated several drug houses which stored and/or sold large quantities of marijuana, to include locations in Rochester, New York identified as 1751 St. Paul Street, 287 Sixth Street and 52 Laser Street.   According to the confidential source, Brandon Washington employs several individuals to sell marijuana and/or protect these locations, including his brother Jermell C. Washington, Deadrick Fulwiley and Priest Barr, among others.   In the course of the ongoing investigation, numerous controlled purchases of marijuana were made from these locations in order to properly apply for state search warrants.

## PROBABLE CAUSE

### Search Warrant at 1751 St. Paul Street – June 14, 2022

11.      On June 14, 2022, members of the Rochester Police Department ("RPD") executed a narcotics search warrant signed by the Hon. Victoria Argento, Supreme Court, Monroe County.  Upon entry, they located the sole occupant, Priest Barr.  After the location

was secured, officers observed a large quantity of plastic trash bags which further contained hundreds of mylar bags filled with user-quantity servings of marijuana, all packaged for street level sales.   One bag also contained numerous plastic vials containing marijuana, also packaged for street level sales.   Officers also located "business cards" in the name of "House of Exotics," which advertised "25 Flavors Plus" of marijuana, contained the address of the location, and provided directions on the card to "Ring Red Doorbell."   Plastic storage bins were located on the south side of the living room, each filled with different flavors of marijuana.   United States currency totaling $8,254 was located among the various packages of marijuana, along with drug ledgers and scales.   The location also contained numerous bright orange Home Depot 5-gallon buckets, which have recently been observed in marijuana drug houses (aka unlicensed marijuana dispensaries) that sell different flavors of marijuana. A large portion of the marijuana was packaged in bright colored commercial packaging reflective of the different flavors of marijuana.   A sign listing the different varieties/flavors of marijuana was also posted on the front door.  The gross weight of the marijuana seized was approximately 47 pounds.  Samples of the green leafy substances tested positive for the presence of marijuana.  A photo of the various types/flavors of marijuana and cash stored in the plastic containers is shown below.



12.     Officers also observed HD surveillance cameras on the front of the location. The cameras appeared to be in working order as the cameras were connected to a power source.   The cameras were seized and the contents of the stored HD video recordings were reviewed as part of this investigation.   The recordings showed sales occurring day and night at the location.  As relevant here, the recordings also showed Brandon Washington at the location on several occasions in the days leading to the execution of the search warrant.  An example of Washington's presence 3 days prior to the execution of the warrant, as shown below.



**Murder Leads to Search Warrant at 287 Sixth Street – July 16, 2022**

13.     On July 16, 2022, Rochester Police Department (RPD) officers responded to 287 Sixth Street for the report of a person shot. Upon arrival, officers found an unresponsive male, face down in a pool of blood on the side yard.  The deceased was identified as Marcus Bennett, who suffered multiple gunshot wounds and was pronounced dead at the scene. Officers and Crime Scene Technicians observed multiple casings on the ground near the victim. A preliminary interview with witnesses revealed that a male suspect who was armed with a firearm fired multiple shots at the victim striking him several times. The suspect was initially at the front of 287 Sixth Street but went to the rear where the shooting occurred.  The suspect then fled back toward the front of the location.  No arrests have been made to date.

14.     As officers secured the crime scene around 287 Sixth Street, they observed four surveillance cameras on the front of the location. The cameras appeared to be in working order as the cameras were connected to a power source and there is a red light visible on the cameras in the dark.   The front windows of the location were boarded up with thick plywood

except for a small section of the window.  The window was partially open allowing a view into the living area.  RPD Sgt. Zenelovic observed two large clear bags containing a large amount of US currency and what appeared to be dozens of packages of marijuana packaged for sale.

15.     Within hours of the homicide, the Honorable Monroe County Judge Julie Hahn signed a search warrant authorizing a search of 287 Sixth Street, lower apartment.  The lower apartment was found to be very sparsely furnished and appeared to be used solely as a drug selling location, otherwise known as a "trap" or "gate" house.    There were multiple plastic storage bins containing what appeared to be prepackaged marijuana, consistent with marijuana packets located in the storage bins at 1751 St. Paul Street.    Similarly, a sign displaying "House of Exotics" was found in the kitchen.  Near the window, there was a dry-erase board which had an inventory and price chart of various flavors of marijuana for sale written in marker, similar to the display at 1751 St. Paul Street.  A door bell was affixed to the frame of the window, also similar to the arrangement at 1751 St. Paul Street.

16.     As a result of the warrant, Investigators seized approximately 20 pounds of suspected marijuana in commercially packaged baggies, drug ledgers, approximately $10,000 in cash, and a Beretta Pietro SPA, model 92S, 9 mm handgun loaded with 13 rounds of ammunition lying in plain view on a table next to the drug ledgers.  *See* photo below. Investigators also located multiple rounds of assorted ammunition, and an HD video surveillance system.  There were no persons found inside the location at the time.  A sample of the green leafy substances seized tested positive for the presence of marijuana.  The marijuana was packaged in similar commercial quality bags as those found at 1751 St. Paul

Street.   Finally, the location had numerous bright orange Home Depot 5-gallon buckets, similar to the orange buckets located at 1751 St. Paul Street.





17.    Upon reviewing the recordings on the HD video surveillance system on the day Marcus Bennett was killed, I reviewed still images which showed Brandon Washington leaving the 6th Street location shortly prior to the murder.    To be fair, there is no evidence at that Washington participated in that murder, and the case remains unsolved.    Nevertheless, earlier that day, a known associate of Washington, Deadrick D. Fulwiley, was observed carrying a large black duffel bag into the drug house at 287 Sixth Street premises at approximately 3:48 pm.    Washington was observed walking directly behind Deadrick Fulwiley up on to the porch, and both men entered the premises.    They left together a short time later.  As detailed in the following paragraphs, the duffel bag was later found to contain multiple firearms.



**DEADRICK FULWILEY @ 287 6th Street on July 16, 2022**



**BRANDON WASHINGTON @ 287 6ᵗʰ Street on July 16, 2022**

**Second Search Warrant at 287 Sixth Street – July 21, 2022**

18.     Just five days later, on July 21, 2022, law enforcement officers from the Rochester Police Department were again dispatched to Sixth Street.  At approximately 4:52 pm, there were ShotSpotter activations: ShotSpotter ID: #332425 for four (4) rounds near 279 Sixth Street. At 4:53 pm, a second activation of seven (7) rounds came in under ShotSpotter ID: #332424 at 287 Sixth Street.

19.     Officers arrived on scene at approximately 4:54 pm.  Officers observed several gun casings in the middle of the roadway between 279 and 287 Sixth Street. As officers approached 287 Sixth Street, officers observed what appeared to be numerous bullet strikes into the residence.  Officers also observed a smoldering material approximately 10 yards east

of the front of the house, as well as smoldering material in the bushes immediately in front of the porch of 287 Sixth Street.  A broken Budweiser bottle was observed on the roof of the porch, but it was unknown if any burning material entered the second floor. Several additional broken Budweiser bottles containing flammable liquids, with cloth inserted in the tops like Molotov cocktails, were located in the front and north side of 287 Sixth Street.  It appeared that there was an attempt to use the Molotov cocktails to set the drug house at 287 Sixth Street on fire.

20.      Officers attempted to make contact with the resident(s) of 287 Sixth Street but there was no answer at the front door or rear doors.   Fearing that an individual(s) within 287 Sixth Street may have been struck by the expended bullet rounds or that remnants of a Molotov cocktail might be burning inside the residence, RPD officers made entry into the downstairs residence.  While clearing the downstairs, officers immediately observed a set-up similar to the one found by officers just four days earlier:  Numerous packages of suspected marijuana in plastic bins, loose US currency and rounds of ammunition in a firearm magazine, all in plain view.  Officers then located defendant JERMELL C.  WASHINGTON in the rear of the residence in the ground floor apartment, northwest bedroom.  Again, Jermell C. Washington is the older brother of defendant Brandon Washington.

21.      Similar to July 16, 2022, the location was once again "up-and-running," offering multiple flavors of marijuana all packaged in commercial packaging.   The location also had numerous bright orange Home Depot 5-gallon buckets, commonly used to separate different types of marijuana for sale.





22.     After securing the downstairs, officers then proceeded to the upstairs apartment which was found to be locked with a deadbolt.   Given multiple bullet strikes to the second floor/exterior siding, officers forced entry.   They found the location to be completely vacant and unoccupied.   However, while clearing the location, officers observed an AR-type semi-automatic rifle lying in the bathroom.   Officers also observed an open, black duffel bag which contained additional firearms and ammunition lying on the floor.   Officers thereafter secured the entire location and investigators from the Rochester Violent Crime Team and Rochester Fire Department responded to the location.

23.     Shortly thereafter, Rochester Police Department Investigator/ATF Task Force Officer (TFO) Joseph Briganti drafted a New York state Search Warrant which was signed by the Hon. Julie Hahn.  At approximately 8:48 p.m., RPD investigators executed the search warrant, where they located and seized:

    a.  Approximately 24.5 pounds of marijuana in the downstairs apartment;

    b.  Approximately $3,390.00 in US currency in the downstairs apartment;

    c.  Drug ledgers in the downstairs apartment;

    d.  A 7.62 x 39 mm Magpul magazine loaded with 26 rounds of Tulammo ammunition, was recovered in the downstairs apartment;

    e.  One (1) Freedom Ordnance Manufacturing FX-9 Pistol bearing serial number 8009603 in the upstairs apartment bathroom;

    f.  One (1) Romarm GP WASR 10/63 7.62 x 39 mm rifle bearing serial number AI-2178-84 bearing serial number AI-2178-84 in the upstairs apartment;

    g.  One (1) Glock Model 37 .45 ACP semiautomatic pistol bearing serial number LNH252 (stolen).

h.  One black duffel bag, which appeared to be the very same bag that Deadrick
Fulwiley and Brandon Washington brought to the location on July 16, 2022.

i.  A DVR Video Surveillance System.

24.     Your affiant and RPD Investigator/TFO John Fiorica thereafter interviewed
Jermell Washington at the RPD Public Safety Building.   Investigator Fiorica read
Washington his Miranda rights, which he did waive and agreed to talk with investigators.
Washington informed investigators that he has been working at 287 Sixth Street since in or
about May of 2022.  Washington stated he works, selling marijuana, 11 hours per day, seven
days a week and earns approximately $500-600 per week.  Washington went on to say he
counts all the money he makes in drug sales and provides it to an individual he chose not to
identify.   Washington stated the unidentified male then resupplies 287 Sixth Street with
quantities of marijuana and takes the proceeds (cash) money from Washington. Washington
stated, on a slow day, he sells approximately $2,500.00/day worth of marijuana and on a
good day he sells $5,000-$6,000.  Washington informed investigators that the upstairs
apartment was vacant, but that he had access to it and that he had been in the upstairs
apartment approximately "three times." [1]

---

[1]     On July 26, 2022, RPD Investigator Joseph Briganti applied for and received another
search and seizure warrant for 287 Sixth Street, upstairs and downstairs.  This was an effort
to secure a set of keys that had previously been observed in the downstairs apartment where
Jermell Washington was located.   Unfortunately, the keys were not seized during the
execution of the July 21, 2022 search warrant.  On July 26th, the keys were located in the
living room right where officers had previously observed them.  Investigator Briganti then
used the keys in attempt to see if they fit the deadbolt lock for the upstairs apartment,
confirming that one of the keys did in fact operate the dead bolt.  Accordingly, it is clear that
the occupants of the downstairs apartment had the ability to access the upstairs vacant
apartment.

25.     Your affiant also reviewed the seized DVR system to ascertain whether there were additional videos of Brandon Washington at the 6th Street location during the time period between the first search warrant which occurred on July 16, 2022 and the second search warrant which occurred on July 21, 2022.   Apparently  undeterred, Washington and his associates re-opened the drug house.  An example of Brandon Washington's presence is shown below on July 18, 2022, wearing the same distinctive bandana as he has been observed wearing on numerous occasions.



### JULY 21, 2002

### Murder of RPD Police Officer Anthony Mazurkiewicz
### Leads to Search Warrants at 52 and 55 Laser Street, as well as 1751 St. Paul

26.     Predicated upon what appeared to be a drive-by shooting and attempted arson at 287 Sixth Street, a decision was made to conduct police surveillance in the area of Laser Street.  Based upon information obtained through the investigation up to that point, it was evident that Brandon Washington was not only responsible for supplying the drug houses at 1751 St. Paul Street and 287 Sixth Street, but that the violent dispute with R.S.'s  rival gang

was intensifying. Specifically, because investigators believed that R.S.'s crew was likely responsible for attempting to burn down and shoot up Washington's drug house at 287 Sixth Street, there was some apprehension that Washington may retaliate.

27.     The concern that Washington or his associates might retaliate was magnified given that the day prior, that is, July 20, 2022, at approximately 9:59 am, RPD officers responded to a 911 call at Brandon Washington's residence at 55 Laser Street for the report of a "shots fired."[2]    When officers arrived at the location, they recovered twenty-seven .9 mm and five .45 caliber casings in the street and front yard of 55 Laser Street. Responding officers also noted multiple bullet strikes to the front façade of 55 Laser Street.

28.     Adding to the concern, Washington was listed in the Rochester Police Department database as having filed a report for his car being shot up while it was parked in front of 439 Melville Street on Monday, July 11th, 2022, at 9:05 pm.. Brandon Washington left the scene before the police arrived.

29.     In addition to his personal residence at 55 Laser Street, Washington has a significant relationship with the house across the street, 52 Laser Street.   Indeed, Washington's associate, Deadrick Fulwiley, lives at 52 Laser Street along with two other individuals, including Derrick Steele and Brittney Huggins.

30.     Given Washington's association with both 52 and 55 Laser Street, and the potential for additional violence or retaliation, members of the RPD Tactical Unit were asked to perform general surveillance in that area in the evening of July 21, 2022.  RPD Officers Anthony Mazurkiewicz and Sino Seng were positioned east of the location in an unmarked

---

[2]    According to Rochester City Tax Records, Brandon Washington has owned 55 Laser Street since he inherited it in January 2017.   As of July 2022, he was known to be living at the residence.

police van, near the intersection of Bauman Street and Laser Street. Officers Tom Kirk and Mike Dipaola were positioned west of the location in an unmarked police vehicle on Laser Street. During the surveillance detail, the officers observed several males on the front porch and yard of 52 Laser Street, including Deadrick Fulwiley.

31.    At approximately 9:15 p.m., one of the males, later identified as Kelvin Vickers, exited the porch, crossing the street southbound towards 55 Laser Street, then heading east towards the officers in the van. Vickers later emerged from a backyard and crept up behind the unmarked police van as it was parked facing northbound on Bauman Street. Without warning, Vickers unloaded 17 rounds into the unmarked police van. Both Officer Mazurkiewicz and Seng were struck by gunfire from behind as they were sitting in the undercover van. Officers transported Officer Seng to Rochester General Hospital, where he was treated for three gunshot wounds. Officers transported Officer Mazurkiewicz to Strong Memorial Hospital, where he later died from his injuries.

32.    Vickers was located shortly after the shooting, hiding shirtless and shoeless inside an abandoned house located at 63 Bauman Street, located at the southwest corner of Laser and Bauman Streets. Police also located, inside the same house, a 9 mm semi-automatic pistol wrapped in the sweatshirt Vickers had been wearing. The weapon is further described as a 9mm Luger (9x19 mm) caliber, Glock Model 45 semiautomatic pistol, bearing serial number BVDT650. Subsequent ballistics testing by the Monroe County Public Safety Lab confirmed that the 9 mm semiautomatic pistol was the weapon used to shoot the RPD officers. Vickers, who is from Boston, Massachusetts, is currently facing Indictment in New York state court for the Aggravated Murder of Officer Mazurkiewicz, in violation of NYSPL §125.26, among other charges.

33.     In the course of the homicide investigation that evening, officers were approached by a concerned citizen that a male had been sitting on the porch of 65 Hoff Street. Hoff Street is just one street west of Bauman Street and intersects with Laser Street at its north end.   RPD Sgt. Ricotta approached the male sitting on the porch.   The male gave vague answers about why he was on the porch.   He said it was "the old man's house" but didn't know his name, and said he had been over here before, but "not like over here but he has been around here."   The male identified himself and provided a Texas identification card in the name of Deadrick D. Fulwiley.   Officers then knocked on the door to speak with the residents of 65 Hoff Street. The male resident said that he didn't know Fulwiley.   Fulwiley then told the officers that the streets were shut down so he parked his car in a driveway and got out to walk. When asked where his car was, he said he parked it in a driveway.   Fulwiley said he drives a Dodge.   Fulwiley said he didn't know whose driveway he parked in.   Sgt. Ricotta then walked with Fulwiley to try and determine where his car was parked.   Fulwiley eventually pointed out a Dodge Journey that was parked in the driveway of 52 Laser Street. That same car had been parked at 52 Laser Street when the RPD Tactical Unit started their surveillance on this night.   Fulwiley had three cellular telephones on his person, a wallet and keys to the Dodge Journey parked at 52 Laser Street.

## LASER STREET SEARCH WARRANTS

34.     As members of the Rochester Police Department and the Monroe County Sheriff SWAT teams continued to conduct a yard-to-yard search for any additional suspects and/or evidence of the shooting of the RPD officers, they came upon several guns and boxes of ammunition lying on the ground in plain view in the backyards of 52 and 54 Laser Street. The guns and ammunition appeared to simply have been strewn about the rear lawns in haste.

35.     Accordingly, in the very early morning hours of July 22, 2022, New York state search warrants were obtained and executed at both **52 Laser Street and 55 Laser Street.**  In the backyard of 52 Laser Street, investigators seized a total of four firearms and several boxes of assorted ammunition, to include one (1) 45 Auto caliber, Glock Model 30S, semiautomatic pistol, bearing serial #BEVK184, loaded with 10 rounds.   The firearm had a "switch" or "converter" attached to the gun, as well as a flashlight near the muzzle.  This gun was later determined to be capable of being converted to a fully automatic firearm, in violation of Title 18, United States Code, Section (o)(1).[3]   Three more firearms were located in the same backyard, including:  one (1) black "Ethika" rifle bearing serial # E30427 loaded with 10 rounds; one (1) black Glock 17 9mm handgun bearing serial #CWU596US; one (1) black American Tactical Bulldog shotgun bearing serial #12BD21-18150, loaded with 10 rounds wrapped in coat.

36.     Lying on the ground in plain view in the backyard of the adjacent property at 54 Laser Street, investigators located a fifth gun, this one a 7.62 x 39mm caliber Romarm-Cugir Mini Draco semiautomatic pistol, bearing serial number PE-2799-2018-RO, loaded with 30 rounds of 7.62 x 39 ammunition.

37.     Inside the residence at **52 Laser Street**, investigators located assorted paperwork, a birth certificate, DMV documents, a Covid vaccination card and other

---

[3]     RPD Sgt. Ricotta transported Fulwiley to the Public Safety Building.   RPD Inv. Correia and Inv. Benjamin interviewed Fulwiley after he waived his Miranda rights and agreed to speak with the investigators.  During the course of the interview, Fulwiley admitted to renting a room at 52 Laser Street and to possessing the loaded black 45 Auto caliber, Glock Model 30S, semiautomatic  pistol, bearing serial #BEVK184, that was recovered from the backyard of 52 Laser St.  He is currently charged in state court with Criminal Possession of a Weapon, 2nd Degree.

paperwork in Fulwiley's name, as well as clothes that Fulwiley was known to wear, all in a second floor, northeast bedroom that he maintained.

38.     There were three bedrooms upstairs.  In the second floor south bedroom, investigators located a large quantity of marijuana packed into black and white garbage bags and boxes, all in plain view.  (as shown below).  The individual packages of marijuana were packaged in a similar manner to the colorful individual flavored packages of marijuana being sold at 1751 St. Paul Street and 287 Sixth Street.  In the second floor northwest bedroom, investigators located a large box containing large clear bags and black-colored shrink-wrapped bags full of suspected marijuana. The clear bags had handwriting on them, describing the type/flavor of the marijuana.  In total, investigators removed, in gross weight including packaging, more than 50 pounds of marijuana.  Samples of the green leafy substance later field tested positive for the presence of marijuana.





39.     Investigators also located a Night Owl DVR surveillance system with multiple cameras positioned on the outside of the residence.  All recordings on the Night Owl DVR footage were eventually reviewed.  As relevant here, recorded footage occurring within 30-40 minutes prior to and up to the shooting of the RPD officers clearly shows Fulwiley on the front porch of 52 Laser Street while in possession of the distinctive .45 caliber handgun with a "switch" or "converter" attached to the gun, as well as a flashlight near the muzzle. Fulwiley alternates between holding the gun in his hand, on his lap, and placing it on a table where he was sitting.   The recorded footage also shows Vickers in the porch area holding on to a handgun.  The recorded footage also showed that within minutes after the shooting of the RPD officers, at least two individuals exited the side door of the residence carrying objects in their hands (believed to be the several firearms and ammunition) and running from the location through the back yard.  The side door faces the adjacent residence at 54 Laser Street

where the Romarm/Cugir Mini Draco 7.62 x 39 semiautomatic rifle was located lying on the ground.

40.    A further search of the residence led to the seizure of multiple boxes of .45 caliber, 9 mm caliber and .38 caliber ammunition in the kitchen, as well as numerous individual live rounds throughout the residence.  Paperwork and documents in the name of Derrick Steele and Brittney Huggins were located in the downstairs family room.  Steele and Huggins were inside the location prior to the shooting of the officers occurred, and at the time the two individuals escaped out a side door.  Steele and Huggins were later stopped as they exited the residence after the shooting.   Both were arrested for Criminal Possession of Marijuana in New York state court.  Both Steele and Huggins admitted that they lived at 52 Laser Street.   According to the landlord at 52 Laser, Huggins pays in cash by leaving money in the mailbox.  The officers transported Steele to 185 Exchange Boulevard, 4th-floor, to talk to the investigators.  RPD Investigators R. Benjamin and M. Correia spoke to Derrick Steele.   During their conversation, Steele denied any knowledge of a vehicle being parked in his driveway and told investigators that there was no black 2012 Dodge Journey parked in the driveway of 52 Laser Street, although he and Huggins were stopped by the police in relative close proximity.

41.    Turning now to the search warrant at **55 Laser Street**, the residence of Brandon Washington.  Investigators made entry and located no persons inside.  The house appeared fully furnished, the kitchen was appropriately stocked and all rooms appeared to be "lived in."  Numerous items of paperwork in the name of Brandon Washington were located inside the residence, along with mail addressed to both Deadrick Fulwiley and Jermell Washington. Investigators also observed numerous bullet strikes inside the front room and kitchen of the

residence, as well as within an upstairs bedrooms, consistent with the drive-by shooting report

one day earlier, that is, on July 20, 2022.

42.     A further search of the residence revealed the presence of numerous rounds of

ammunition, including:

> (4) .223 Hornady hollow point rounds
> (1) .223 Remington rounds
> (1) 9 mm Winchester rounds
> (1) 9 mm Blazer rounds
> (10) .38 special Remington Peters rounds
> (2) .38 Special Winchester rounds
> (3) .38 Special Federal rounds
> (1) 12 gauge Remington round
> (15) 12 gauge Federal rounds

43.     Investigators also located the following ammunition, with unknown

manufacturers:

> (31) 9mm rounds found in extended magazine unknown manufacturer
> (16) 9mm rounds in magazine unknown manufacturer
> (1) .40 round unknown manufacturer
> (1) 9mm round unknown manufacturer

44.     In addition, investigators located a bank of walkie-talkie devices plugged into

an outlet in the kitchen, as well as a holster and ammunition magazine in a nearby coat

pocket. Additionally, investigators located a large quantity of marijuana, including hundreds

of street-level packages comparable to the marijuana packages sold at 287 6th Street and 1751

St. Paul. Most notably, in one black plastic bag found in the master bedroom, numerous

plastic vials of marijuana were located with a sticky note enclosed within the bag stating "6th

Street," further evidencing Washington's relationship with that particular drug house.

Samples of the green leafy substances field tested positive for the presence of marijuana.

Photos of the some of the marijuana are set forth below.





45.     In the basement of 55 Laser Street, investigators located numerous bright orange Home Depot 5-gallon buckets, the same as were found in 287 6th Street and 1751 St. Paul.



## 1751 St. Paul Street Search Warrant

46.      Virtually simultaneous with the search warrants being executed on Laser Street, a separate set of investigators executed a search warrant signed by the Hon. Caroline Morrison at 1751 St. Paul Street, the exact same location that had been searched back on June 14, 2022.   Based upon recent controlled purchases of marijuana from the location, in addition to ongoing surveillance, it was clear that this location was once again fully operational.   When investigators entered, they once again located Priest Barr, the sole occupant.   As with the prior warrants, there was a dry-erase board with a description of types of marijuana and prices.



47.     Consistent with the set-up at 287 6th Street, the living room had numerous plastic bin drawers containing different flavors of packaged marijuana, as shown in the photo below.   There were large sums of cash in various drawers in various denominations.   The front door was set up for wooden barricades, although they were not in place.   Four walkie-talkie units were found, similar to the walkie-talkies found at 55 Laser Street.   Investigators further observed several scales and a DVR security system with cameras on the exterior of the property.   Several bright orange Home Depot 5-gallon buckets were also located.   The total gross weight of marijuana was approximately 11 pounds.   A sample of the green leafy items found in the packages tested positive for the presence of marijuana.



48.    In the aftermath of this search warrant, investigators reviewed the contents of a phone recovered from Priest Barr at 1751 St. Paul Street during the execution of the warrant on July 22, 2022.  The phone number 585-285-0780 was listed under the contact "Mack", which is a known nickname for Brandon Washington.  Barr was also sent a photo from 585-820-5776, a phone collected during the search warrant at 52 Laser Street, and identified via forensic examination as used by Kelvin Vickers.   The photo showed Barr and Vickers inside 1751 St. Paul with the caption, "Ion say much but them hittas wit me".

**Vehicles Associated with Washington's Crew and Ongoing Violence**

49.      The black Dodge Journey (shown below) identified by Fulwiley remained parked in the driveway of 52 Laser Street at the time of the search warrants were conducted. The VIN on the Dodge Journey was traced through DMV records.      RPD Investigators learned that the vehicle was purchased on the afternoon of July 21st from "A5 Automotive, dba "M R Auto Sales LLC," located at 285 Dewey Avenue in the city of Rochester.



50.      RPD investigators then visited the auto shop and were able to obtain the security video of the several days leading up to the shooting of the RPD officers.  Specifically, upon reviewing the security video for the afternoon of July 21st, several males were observed to be present when the black Dodge Journey was purchased, including Brandon Washington, Kelvin Vickers and Deadrick Fulwiley.   Washington and Fulwiley are shown in the photograph below.  Notably, Brandon Washington (on the left) was wearing the same distinctive bandana at the Dewey Avenue car shop as he was previously observed wearing at both the St. Paul and 6th Street drug houses.  Fulwiley is wearing the same "Memphis" t-shirt that was subsequently located among his personal belongings at 52 Laser Street during the

execution of the search warrant.   The vehicle was purchased for $2,000 cash.  Payment for the

vehicle was made by Washington but the Retail Certificate of Sale listed the purchaser as Deadrick

Fulwiley of 52 Laser Street, Rochester, New York.



**July 20, 2022**

**Previously Purchased Gray Dodge Caliber Used in
Homicides on North Clinton Avenue**

51.    While investigating the purchase of the black Dodge Journey from A5

Automotive at 285 Dewey Avenue, investigators learned that another vehicle had been

purchased by Washington from the same location. Specifically, RPD Investigators Correia

and Dearcop learned from a concerned citizen that Washington purchased a gray Dodge

Caliber on July 14, 2022. This information was corroborated by information provided to

RPD from a second concerned citizen.[4]  A review of the security video from this location

confirmed that on July 14, 2022, Washington and Deadrick Fulwiley were in fact present at

A5 Automotive when they purchased the vehicle.  The photo depicts both Washington

(foreground) and Fulwiley (red pants) at the auto shop on July 14, 2022.   The vehicle was

ultimately put in a female associate's name.



52.    Less than one week later, that gray Dodge Caliber minivan was used in a

homicide and arson.  On Wednesday, July 20, 2022, at approximately 12:40 am, RPD officers

responded to 764 N. Clinton Ave for the report of three people shot. Upon arrival officers

---

4    The information obtained from the concerned citizens was from their own personal
knowledge.  Their identities of these individuals are being withheld from this publicly filed
document for safety reasons, but investigators possess their names, dates of birth, addresses
and phone numbers.  The information was voluntarily provided to investigators, with no
promises in exchange for the information, other than anonymity.

found Tireek Burden suffering from one gunshot wound to his leg.   Richard Collinge III was shot multiple times and pronounced dead at the scene.   Myjel Rand was shot twice and transported to University of Rochester Medical Center, he was also pronounced dead.   The victims killed on Clinton Avenue were known associates of R.S. aka "Coop."

53.   Based upon a review of Rochester "Blue Light" cameras, along with private residence cameras, the vehicle used in the Clinton Avenue shootings was identified as the grey Dodge Caliber.   And just three hours after the homicides were committed on Clinton Avenue, at approximately 3:00 a.m. on July 20th, that same gray Dodge Caliber was found completely engulfed in flames in the driveway of 36 Weyl Street in the city of Rochester.   The residence at 36 Weyl Street is the home of R.S.'s mother, and her home was severely damaged by the fire.   Six hours later, Washington's house at 55 Laser Street was sprayed with multiple rounds, arguably in retaliation for the arson and the Clinton Avenue murders. See ¶ 21, *supra*.

54.   Critically, the keys to the grey Dodge Caliber were located in Deadrick Fulwiley's bedroom during the course of the search warrant at 52 Laser Street.

## Ballistics Testing Links the Laser Street Guns to the Firearms Used in the Clinton Avenue Murders

55.   Within the last two weeks, ballistics testing was finalized on the numerous casings obtained from the North Clinton Avenue murders.   Specifically, investigators recovered multiple .45 caliber, 9 mm caliber and 7.62 caliber casings strewn about the ground. The recovered casings were submitted to and later tested by the County of Monroe Crime Laboratory.   Firearms examiners determined that the .45 caliber casings found on North Clinton Avenue were fired from the same 45 Auto caliber, Glock Model 30S, semiautomatic pistol, bearing serial #BEVK184, that was located in the backyard of 52 Laser Street.

Fulwiley admitted to possessing this gun in a post-arrest statement. *See* Footnote 3, above. Firearms examiners determined that the 7.62 caliber casings found on North Clinton Avenue were fired from the same 7.62 x 39mm caliber Romarm-Cugir Mini Draco semiautomatic pistol, bearing serial number PE-2799-2018-RO, that was located from the backyard of 54 Laser Street. Finally, firearms examiners determined that the 9 mm caliber casings collected on North Clinton Avenue were fired from the same 9mm Luger (9x19 mm) caliber, Glock Model 45 semiautomatic pistol, bearing serial number BVDT650 that was recovered along with Kelvin Vickers as he was hiding at 63 Bauman Street – the same gun that was also used to murder RPD Officer Anthony Mazurkiewicz.

### NYS Grand Jury Indicts Washington's Associates with Murder

56.    On Tuesday, September 27, 2022, Kelvin Vickers, Deadrick Fulwiley and a second Boston, Massachusetts resident named Raheim Robinson were indicted by a Monroe County, New York Grand Jury in connection with  double homicide on North Clinton Avenue.  Each man faces four counts of first-degree murder, one count of attempted second-degree murder and first-degree reckless endangerment, and 12 counts of second-degree criminal possession of a weapon.  They were also charged with fourth-degree arson, a felony, relating to the arson at 36 Weyl Street, the residence of R.S.'s mother.

### Arson Committed at Brandon Washington's Residence at 55 Laser Street

57.    On July 31, 2022, approximately 10 days after the murder of RPD Investigator Mazurkewicz,  Washington's residence at 55 Laser Street was torched.   Based

upon a subsequent investigation and review of private residential cameras, at approximately 3:32 a.m., a car pulled up and parked across the street from 55 Laser Street. Two unknown males exited the vehicle and approached the front porch area of 55 Laser Street. They were then observed poring something onto the porch area. Within moments, a large flash of fire was observed and the persons fled back to the car and sped away. The Rochester Fire Department responded to the location to extinguish the fire. No persons were found to be inside the residence. The residence sustained significant fire, smoke and water damage. As a result of the fire, the residence was rendered unhabitable. Investigators believe this act was committed in retaliation for the arson committed at 36 Weyl Street.

### Brandon Washington is Currently Living at 225 River Street

58.     The residence at **225 River Street, Apartment #1** is the home of Darlene Washington, the mother of Brandon Washington. In the aftermath of the burning of Mack's home at 55 Laser Street on July 31st, he was staying at various hotels in the greater Rochester area. This was confirmed by live surveillance, hotel records and data from a vehicle tracker installed on Washington's various rental vehicles. Since the start of this investigation, and verified in the same manner, Washington has visited 225 River Street nearly every day. Police reports have also indicated he uses this address for meeting with insurance adjusters and arson investigators. Live and video surveillance has shown him entering the location on numerous occasions. Moreover, several phone calls intercepted over a NYS court authorized wiretap corroborates his current living arrangements.

59.     On August 8th, 2022, the Honorable Victoria Argento, NYS Supreme Court

Judge, did sign an Order authorizing the eavesdropping upon cellular telephone instrument(s) (585) 623-2566 (hereinafter Mack Phone 1), operating on the AT&T Wireless network subscribed to Brandon Washington, and being utilized by Brandon Washington.    On September 6th, 2022, the Honorable Argento, NYS Supreme Court Judge, signed an Order authorizing the first 30-day extension of eavesdropping upon cellular telephone instrument(s) (585) 623-2566, operating on the AT&T Wireless network subscribed to Brandon Washington, and being utilized by Brandon Washington.

60.    On September 9, 2022, at approximately 10:06 am, an incoming call (Ref# 5887) was legally intercepted over Mack Phone 1 being used by Washington to receive a call from his mother, Darlene Washington at (585) 957-4236.  During this call, which your affiant has heard and reviewed and based upon my training, experience and knowledge of this investigation, in sum and substance, Washington and his mother are discussing the possibility of him staying with her because of his financial issues.  At the time of this call, and up to present day, Washington has been waiting on an insurance pay out from the fire at 55 Laser Street.  After discussing the lack of payment, Washington's mom tells him, "push come to shove, you gonna have to occupy that room next door", which, I believe, means she is telling him he can stay with her in a spare room.

61.    On September 21, 2022, at approximately 6:17 pm, an incoming call (Ref# 7205) was legally intercepted over Mack Phone 1 being used by Washington.  During this call, Washington's cell phone pings at 225 River Street.

62.    On September 24, 2022, at approximately 8:20 pm, an outgoing call (Ref# 7418) was legally intercepted over Mack Phone 1 being used by Washington to call an unknown male at (716) 382-0348.  During this call, which your affiant has heard and reviewed and based upon

my training, experience and knowledge of this investigation, in sum and substance, Washington

and the unknown male are discussing Washington's financial difficulties.  Washington tells the

unknown male that people keep asking him for money.  Washington said, "I ain't got no money.

I got no money coming in right now".  This is consistent with Washington's income being

limited since his cannabis selling locations were shut down by law enforcement.

63.     On September 26, 2022, at approximately 6:47 pm, an outgoing call (Ref# 7612)

was legally intercepted over Mack Phone 1 being used by Washington.  During this call, which

your affiant has heard and reviewed and based upon my training, experience and knowledge of

this investigation, in sum and substance, Washington and another individual discuss how

Washington has been staying at 225 River Street all day.  Washington tells the male he's been

"in the fucking house all God damn day".  At the time of this call, a tracking device on

Washington's vehicle indicated the car was parked in the area of 225 River Street and his phone

pings place him in the same area.

64.     On September 26th and 27th, 2022, your affiant was conducting surveillance at

225 River Street and observed Washington exit the residence on both days between 3:00 pm and

4:00 pm..

65.     Based on the vehicle tracking device, cell phone pings, video surveillance and his

phone conversations, Washington began utilizing 225 River Street as his primary residence

within the last week.  He has not stayed at a hotel since September 19th.  Since September 20th,

Washington  has stayed overnight at 225 River Street five of seven nights and the other nights

have been spent at locations associated with his female companions.   It is reasonable to assume

that he currently maintains his personal effects, including cell phones, electronic devices and

other documents/records, at this residence.

## MAINTENANCE OF EVIDENCE

66.     Based on my training, my experience, my participation in numerous other narcotic investigations, my participation in this investigation, and my discussions with other experienced law enforcement agents and officers, I am aware that that:

a.     Traffickers of controlled substances commonly maintain records, notes, and other papers relating to drug trafficking, some of which may be in code, including but not limited to sales receipts, shipping labels, shipping receipts, shipping boxes, order forms, storage receipts, records, operating manuals, computer records, publications, notes, checks, money orders, and money transfer receipts. The aforementioned records, notes, and other papers are commonly maintained where the drug possessor/trafficker has ready access to them, such as on their person, or in their homes, garages, vehicles or businesses, other properties that they own, or in electronic storage devices, including, but not limited to computers, laptop computers, computer storage media (including discs, flash drives and hard drives), cellular telephones and smartphones;

b.     Traffickers of controlled substances commonly maintain books or papers that reflect addresses, telephone numbers and/or other contact information for their associates or sources of supply and such items may be in code. The above addresses, telephone numbers and other contact information may also be stored in electronic storage mediums, including but not limited to computers, laptop computers, computer storage media (including discs, flash drives and hard drives), cellular telephones and smartphones;

c.     Traffickers of controlled substances commonly take, or cause to be taken, photographs/videos of themselves, their associates, their property, their drugs, or their firearms, and usually maintain these photographs/videos in their residences. The above photographs/videos may also be stored in electronic storage media, including but not limited to cellular telephones, smartphones, digital cameras, tablet computer devices, home computers, and computer storage compact discs;

d.     Traffickers of controlled substances commonly keep and maintain personal computers, cellular telephones, and smartphones, on their person, in their residences, in their vehicles, and in their businesses, to further their drug trafficking activities (*e.g.*, to communicate with co-conspirators, customers, and suppliers). The use of personal computers by drug traffickers, as well as by the general public, has increased dramatically during the past several years. I have participated in recent investigations where computers, cellular telephones and/or smartphones were seized and searched pursuant to court-authorized search warrants that contained, among other things, digital photographs of drugs, firearms and bulk cash; digital photographs of and contact information for co-conspirators, suppliers and other drug associates; and text messages containing details of drug transactions. I am also familiar that

that the search, retrieval, analysis, documentation and authentication of all such electronically stored computer data (to include cellular telephones) requires analysis by a qualified computer specialist to prevent the loss of data either from accidental or deliberate destruction;

     e.     Traffickers of controlled substances commonly maintain cellular telephones and other communication devices on their person, in their residences, in their vehicles, and in their businesses, that are utilized to further their firearm and drug trafficking activities, including contacting other individuals that they are involved in drug trafficking activities with; certain electronic devices, including i-Phones, Blackberries, i-Pods, and Android phones, store information such as email messages, chats, multimedia messages, installed applications or other electronic communications, calendars, notes, passwords, dictionary entries, Global Positioning Satellite ("GPS") entries, internet protocol connections, and location entries, including cell tower and WiFi entries internet or browser entries or history. In addition, these devices often contain proprietary software, in the form of system, data, or configuration information, which enable the types of information and data described above to be accessed and analyzed. These items remained stored on the electronic devices even if the device in question has lost all battery power, and has not been used for an extended period of time.

## REQUEST FOR NO-KNOCK AUTHORIZATION

67.     I respectfully request that the search warrant for **225 River Street, Apartment #1, Rochester, New York** authorize the executing agents/officers to enter the location without first knocking and announcing their presence. As detailed in this affidavit, Washington and his associates have possessed numerous firearms and ammunition, and have engaged in extremely violent behavior, including murder. Washington also has a prior conviction for Manslaughter.   I believe that requiring the agents/officers to first knock and announce their presence will result in a significant threat to the safety of the agents/officers.

68.     Based upon the foregoing, it is respectfully requested that law enforcement not be required to knock and announce their presence because to do so would allow the occupants of 225 River Street, Rochester, New York, including Washington, an opportunity to observe who is coming and potentially arm themselves with weapons or dangerous substances, exposing the executing agents/officers to a possible ambush.

<u>CONCLUSION</u>

69.     **WHEREFORE**, based upon all of the foregoing, I submit there is probable cause to believe that the items listed in ATTACHMENT B, SCHEDULE OF ITEMS TO BE SEIZED, which is incorporated by reference as if fully set forth herein, are presently concealed and will be found in 225 River Street, Apartment #1, Rochester, New York, and that those items are evidence, records, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (possession of controlled substances with intent to distribute and distribution of controlled substances), 846 (attempt and conspiracy to possess with intent to distribute, and to distribute, controlled substances) and 856(a)(1) (maintaining a drug-involved premises); and 18 U.S.C. §§ 922(g)(1) (possession of firearms by a convicted felon) and 924(c) (possession of firearms in furtherance of a drug trafficking crime).

PATRICK HOFFMANN, Special Agent
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

Affidavit and Search Warrant submitted
electronically by email in .pdf format. Oath
administered, and contents and signature, attested
to me as true and accurate telephonically pursuant to
Fed.R.Crim.P. 4.1 and 4(d) on:

September 30 , 2022 at Rochester, NY.

HON. MARIAN W. PAYSON
United States Magistrate Judge